UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| EVA **SANDOVAL**, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | CIVIL ACTION |
| ) | |
| JESSIE BRIAN ETUX **LOY**, and the ) | CASE NO. _____ |
| METROPOLITAN GOVERNMENT OF ) | |
| NASHVILLE AND DAVIDSON COUNTY, ) | |
| ) | |
| *Defendants.* ) | |

## COMPLAINT

1. Plaintiff Eva Sandoval ("Ms. Sandoval") brings this damages action pursuant to 42 U.S.C. § 1983 and Tennessee common law against Defendant Jessie Brian Etux Loy, an officer of the Metropolitan Nashville Police Department ("MNPD"), and Defendant Metropolitan Government of Nashville and Davidson County ("Metro") arising out of her false arrest, false imprisonment, and malicious prosecution by Defendant Loy and the MNPD.

## PARTIES

2. Plaintiff Eva Sandoval Quiahua is an adult resident of Nashville, Tennessee.

3. Defendant Jessie Brian Etux Loy ("Defendant") is an adult resident of Mt. Juliet, Tennessee. At all times relevant to this Complaint, Defendant was a police officer with the MNPD. Defendant is sued in his individual capacity.

4. Defendant Metropolitan Government of Nashville and Davidson County ("Metro") is a municipal corporation organized under the Constitution and laws of the State of Tennessee and the Metropolitan Charter. Metro is the proper party for suits against the MNPD.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367. Venue lies in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

### A. The Traffic Stop

6. Shortly past 7:00 a.m. on Friday, March 14, 2014, Defendant Loy pulled Ms. Sandoval over for speeding on Interstate 24-Eastbound.

7. When Defendant Loy asked Ms. Sandoval for a driver's license or proof of identification, she produced her valid Mexican passport, which she stored in a plastic protective sleeve for safekeeping.

8. Defendant Loy reviewed the passport, then ordered Ms. Sandoval out of her vehicle and placed her in the back of his patrol unit.

9. After detaining Ms. Sandoval in the back of his patrol unit for nearly an hour, Defendant Loy cited her for driving without a license and ticketed her for speeding and failure to carry proof of insurance.

10. The narrative portion of the misdemeanor citation Defendant Loy issued Ms. Sandoval for driving without a license reads as follows:

> SUBJECT WAS THE DRIVER OF A VEHICLE STOPPED FOR SPEEDING (K-312048). SUBJECT PRESENTED ME WITH A PASSPORT FROM MEXICO. SUBJECT ALSO PRESENTED ME WITH A PASSPORT. SHE STATED SHE WAS HERE ILLEGALLY. SHE ALSO PRESENTED ME WITH WHAT SHE SAID WAS A DRIVER'S LICENSE FROM HER COUNTRY. HOWEVER THE DRIVER'S LICENSE WAS NOT CONSISTENT WITH A DRIVER'S LICENSE THAT I'VE SEEN FROM MEXICO. SUBJECT DID NOT HAVE A VALID TN DRIVER'S LICENSE. ISSUANCE ON THE PASSPORT APPEARED TO BE MARCH 05, 2009. SUBJECT HAD BEEN ARRESTED FOR NO DL IN NASHVILLE SINCE THAT DATE. AFTER

MAKING SEVERAL PHONE CALLS (202-485-6575) THE PASSPORT WAS NOT VALID.

NWOF

11. Defendant Loy seized Ms. Sandoval's Mexican passport.

12. Defendant Loy failed to provide any receipt or other documentation for this seizure.

13. After the March 14, 2014 traffic stop, Defendant Loy continued to investigate and pursue charges against Ms. Sandoval based upon his belief that her Mexican passport was not valid.

14. Sometime after the March 14, 2014 traffic stop, Defendant Loy submitted to his supervisors an Incident Report in which he claimed:

> Subject was the driver of a vehicle stopped for speeding (K-312048). Subject presented this reporting officer with a passport from Mexico. Subject also presented this officer with a passport. She stated she was here illegally. She also presented me with what she said was a driver's license from her country. However the driver's license was not consistent with a driver's license that I've seen from Mexico. Subject did not have a valid TN driver's license. Issuance of the passport appeared to be March 5, 2009. Subject had been arrested for no DL in Nashville since after that date. After making several phone calls (202-485-6575) the passport was not valid. The front page of the passport appeared to be stuck on with an adhesive and the picture on the passport was raised up off the page.
>
> At this time suspect #1 has not been charged with this offense, only charged with a driver's license offense.

15. Defendant Loy's statement that Ms. Sandoval's passport was not valid based on his calls to (202-485-6575) is false.

16. The number Defendant Loy called reaches a woman named Kimberly Glass with the "Law Enforcement Liaison Section" of an unnamed agency.

17. The number does not belong to the Government of Mexico or any other agency authorized to verify the validity of a Mexican passport on the Government of Mexico's behalf.

18. Defendant Loy's description of the passport as having a front page that appeared to be stuck on with an adhesive and a picture raised up off the page is false.

19. Defendant Loy included this statement with the malicious intent of fabricating probable cause to believe Ms. Sandoval's facially valid Mexican passport was forged.

20. On March 19, 2014, after another officer reviewed this Incident Report, Defendant Loy's supervisor approved it.

21. Based on Defendant Loy's material and maliciously false statements, Defendant Metro and Defendant Loy's supervisors concluded probable cause existed to prosecute Ms. Sandoval for forgery.

22. On April 18, 2014, law enforcement officers came to Ms. Sandoval's home looking for her. Though she was not at home, the officers informed a person who was at the house that they had a warrant for Ms. Sandoval's arrest.

23. Upon learning of the officers' visit, Ms. Sandoval immediately made arrangements to turn herself in to the MNPD, believing that they perhaps mistakenly thought she had missed her April 10, 2014 court date and issued a warrant against her for failure to appear.

24. When she reported to the Davidson County Criminal Justice Center on the evening of April 18, 2014 with proof that he had attended her April 10, 2014 court hearing, Ms. Sandoval was arrested pursuant to a warrant Defendant Loy swore out against her for Forgery, in violation of Tenn. Code Ann. § 39-19-113.

25. Defendant Loy obtained this warrant on or about April 17, 2014 at 11:56 a.m.

26. As probable cause for the Forgery Charge, Defendant Loy stated:

> Subject was the driver of a vehicle stopped for speeding. Upon requesting her identification, she presented me with a passport. The passport stated Mexico Passport. There were several cosmetic things about the passport which raised my suspicion that the passport may be fictitious. After further inspection and calling a number in Washington, D.C. to verify the passport, I was told the passport was not a valid passport in their system. After speaking with our Fraud Unit, I was advised that forgery was the appropriate charge.

27. Defendant Loy's statement that there "were several cosmetic things about the passport" was knowingly, materially, and maliciously false.

28. At no point before or after Defendant Loy encountered Ms. Sandoval on March 14, 2014 did he or anyone in the MNPD contact the Government of Mexico to verify the validity of the Mexican passport Defendant Loy seized.

29. Upon reviewing the allegations in Defendant Loy's warrant when she was informed she would be arrested on April 18, 2014, Ms. Sandoval presented MNPD officers with signed letters from the Consul General of Mexico in Atlanta, Ricardo Camara, attesting to the validity and issue date of Ms. Sandoval's Mexican passport.

30. Notwithstanding this material exculpatory that completely negated the false information Defendant Loy used to establish probable cause the MNPD arrested Ms. Sandoval.

31. Ms. Sandoval spent several hours in jail before being released on her own recognizance by a Judicial Commissioner.

32. Ms. Sandoval incurred legal fees in securing her release and the dismissal of the forgery charge Defendant Loy maliciously lodged against her.

33. On May 14, 2014, upon reviewing letters from the Consul General of Mexico in Atlanta attesting to the fact that Ms. Sandoval's Mexican passport was valid and issued on March 5, 2009, and that 202-485-6575 does not belong to any Consular or Diplomatic Representative of

the Mexican Government in the United States, the State agreed to an outright dismissal of the forgery charge against Ms. Sandoval.

34. After the charges were dismissed, Ms. Sandoval sought the return of her Mexican passport.

35. She requested in writing that her passport be returned on multiple occasions, but Metro, through the MNPD, failed to provide a response.

36. Defendant Loy and the Metro Government have afforded Ms. Sandoval with no adequate state law pre- or post-deprivation remedy for the unconstitutional seizure and taking of her Mexican passport.

37. Upon information and belief, Defendant Loy or the Metro Government have lost destroyed Ms. Sandoval's valid Mexican passport.

## CLAIMS FOR RELIEF

### COUNT I: MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH AMENDMENT (42 U.S.C § 1983) AGAINST DEFENDANT LOY

38. Plaintiff hereby re-alleges and incorporates the allegations in all previous paragraphs.

39. Defendant Loy charged Ms. Sandoval with the offense of Forgery without probable cause.

40. Defendant Loy knowingly made material false statements in his investigative documents and reports which caused the issuance of an arrest warrant against Ms. Sandoval and resulted in her arrest.

41. The forgery charge against Ms. Sandoval resulted in a deprivation of her liberty, in that she was taken into custody, jailed, and then forced to comply with Pretrial Release and attend court dates until her case was dismissed.

42. The forgery charge was ultimately resolved in Ms. Sandoval's favor when the case was dismissed with prejudice on May 14, 2014.

43. Defendant Loy acted with malice when he caused Ms. Sandoval to be falsely charged with and arrested for forgery, and then provided false evidence in support of the warrant for Ms. Sandoval's arrest.

44. The evidence and statements Defendant Loy provided in order to obtain the arrest warrant against Ms. Sandoval were demonstrably and verifiable false.

45. Defendant Loy's false statements and material misrepresentations misled the MNPD and the court into finding probable cause existed to issue an arrest warrant against Ms. Sandoval.

46. Defendant Loy's actions violated Ms. Sandoval's clearly established Fourth Amendment rights.

47. Ms. Sandoval suffered injuries, including, but not limited to, violations of her constitutional rights, loss of liberty, humiliation, and emotional distress as a direct and proximate cause of Loy's illegal actions.

### COUNT II: FALSE ARREST & FALSE IMPRISONMENT IN VIOLATION OF THE FOURTH AMENDMENT (42 U.S.C § 1983) AGAINST DEFENDANT LOY

48. Plaintiff hereby re-alleges and incorporates the allegations in all previous paragraphs.

49. Defendant Loy caused Ms. Sandoval to be arrested without probable cause in violation of the Fourth Amendment by knowingly presenting materially false facts and evidence in support of his application for an arrest warrant.

50. As a result of Defendant Loy's fabrication of probable cause and materially false evidence, Ms. Sandoval was seized and deprived of her liberty.

51. Ms. Sandoval suffered injuries, including, but not limited to, violations of her constitutional rights, loss of liberty, humiliation, and emotional distress as a direct and proximate cause of Loy's illegal actions.

### COUNT III: FALSE ARREST & FALSE IMPRISONMENT IN VIOLATION OF THE FOURTH AMENDMENT (42 U.S.C § 1983) AGAINST DEFENDANT METRO

52. Plaintiff hereby re-alleges and incorporates the allegations in all previous paragraphs.

53. Metro, through the MNPD, adopted an official municipal policy, practice, or custom of allowing officers to rely on a source other than the issuing foreign government authority to verify the validity of foreign passports.

54. Metro, through the MNPD, provided Defendant Loy with the 202-485-6575 phone number pursuant to its official municipal policy, practice, or custom of allowing officers to rely on a source other than the issuing foreign government authority to verify the validity of foreign passports.

55. Metro, through the MNPD, continued its official municipal policy, practice, or custom of allowing officers to rely on a source other than the issuing foreign government authority to verify the validity of foreign passports notwithstanding the commitments of the United States under Article 5(d) of the Vienna Convention of Consular Relations of 1963, and in

blatant disregard the clear and obvious risk that allowing a third party, non-issuing agency to verify the validity of passports could result in the unlawful seizure, detention, arrest, and prosecution of foreign nationals with valid passports.

56. Metro, through the MNPD, enforced its official municipal policy, practice, or custom by arresting Ms. Sandoval after refusing to consider the written confirmation from the Consul General of Mexico in Atlanta that Ms. Sandoval's Mexican passport was valid, and instead relying on Defendant Loy's false representations based on his third-party, non-issuing government verification, that it was invalid.

57. Metro's municipal policy, practice, or custom was the moving force behind Ms. Sandoval's false arrest and false imprisonment on April 18, 2014.

58. Ms. Sandoval suffered injuries, including, but not limited to, violations of her constitutional rights, loss of liberty, humiliation, and emotional distress as a direct and proximate cause of Metro's unlawful municipal policy, practice, or custom.

### COUNT IV: UNCONSTITUTIONAL SEIZURE OR TAKING OF PROPERTY IN VIOLATION OF THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS (42 U.S.C § 1983) AGAINST DEFENDANT LOY AND DEFENDANT METRO

59. Plaintiff hereby re-alleges and incorporates the allegations in all previous paragraphs.

60. Defendant Loy seized Ms. Sandoval's Mexican passport without probable cause.

61. Defendant Loy provided no receipt for the seizure of Ms. Sandoval's identification document.

62. Defendant Loy and Defendant Metro provided no pre- or post-deprivation notice, hearing, or opportunity to challenge the seizure of Ms. Sandoval's Mexican passport.

63. Defendant Metro, through the MNPD, retained Ms. Sandoval's Mexican passport after it was established that no probable cause existed to retain her identification document.

64. Defendant Metro, through the MNPD, denied oral and written requests from Ms. Sandoval to return her Mexican passport after the forgery charge was dismissed.

65. No adequate state law process or remedy exists to obtain the return of Ms. Sandoval's Mexican passport, and the in the alternative, any such remedy would be futile and would not cease the unlawful seizure and continuing deprivation of Ms. Sandoval's Mexican passport.

66. Defendants' actions in seizing Ms. Sandoval's Mexican passport without probable cause violate her clearly established right under the Fourth Amendment.

67. Defendants' actions in retaining Ms. Sandoval's Mexican passport without legal right or justification and without any opportunity to challenge this deprivation of her property constitute an unconstitutional taking and violation of due process in violation of her clearly established rights under the Fifth and Fourteenth Amendments.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants Loy and Metro as follows:

1. That she be awarded all damages to which it may appear she is entitled by the proof submitted in this cause, including nominal damages, compensatory, and punitive damages;

2. That she be awarded attorney's fees pursuant to 42 U.S.C. § 1988, plus compensation for any expert fees and costs reasonably expended by Plaintiff in pursuing this matter;

3. That she be awarded pre- and post-judgment interest;

4. That she be awarded declaratory and permanent injunctive relief requiring the Metro Government to return her Mexican passport; and

5. That she be awarded all other relief to which it may appear she is entitled, the interests of justice demanding it.

Date: April 16, 2015

Respectfully submitted,

_____
R. Andrew Free, BPR 30513
Bank of America Building
414 Union Street, Suite 900
Nashville, Tennessee 37219
(615) 244-2202
Andrew@ImmigrantCivilRights.com
*Attorney for Plaintiff*